Clarisse C. Petersen (SBN 260806)
Clarisse.Petersen@jacksonlewis.com
Kaitlyn N. Spear (SBN 358649)
Kaitlyn.Spear@jacksonlewis.com
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Telephone:  (949) 885-1360
Facsimile: (949) 885-1380

Attorneys for Defendants
Trane U.S. Inc. and Louise Rasmussen

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFEK TAMER, an Individual,<br><br>                Plaintiff,<br><br>        v.<br><br>TRANE U.S. INC., a Delaware Corporation and LOUISE RASMUSSEN an Individual; and DOES 1-10,<br><br>                Defendants. | Case No.: 8:26-cv-299<br><br>*[Orange County Superior Court State Case No. 30-2025-01531745-CU-OE-NJC]*<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint Filed:   December 8, 2025<br>Removal Date:      February 9, 2026<br>Trial Date:          None Set |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF RAFEK TAMER, AND PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Trane U.S. Inc. ("Trane") and Louise Rasmussen ("Rasmussen") (collectively, "Defendants") remove this action from the Orange County Superior Court to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441, and 1446 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, and the foregoing facts were also true when Plaintiff filed his Complaint.

**I.      THE STATE COURT ACTION**

1.      On December 8, 2025, Plaintiff Rafek Tamer ("Plaintiff") commenced the aforementioned action against Defendants by filing a Complaint in the Superior Court of the State of California, County of Orange entitled *Rafek Tamer v. Trane U.S. Inc., et al.*, Case No. 30-2025-01531745-CU-OE-NJC (the "State Court Action"). In the State Court Action, Plaintiff asserts the following claims against Trane: (1) sex/gender discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) pregnancy-based associational discrimination in violation of the FEHA; (3) retaliation in violation of the FEHA; (4) failure to take all reasonable steps to prevent discrimination and retaliation; (5) wrongful termination in violation of public policy; (6) failure to re-hire; and (7) intentional infliction of emotional distress. The sole cause of action alleged against Defendant Rasmussen is intentional infliction of emotional distress. A true and correct copy of the Summons and Complaint is attached as **Exhibit A** to the Declaration of Clarisse C. Petersen ("Petersen Decl.") at ¶ 2 filed concurrently herewith.

2.      On January 9, 2026, Plaintiff served Trane's registered agents with the Summons and Complaint, and on January 14, 2026, Plaintiff personally served Rasmussen with the Summons and Complaint. A true and correct copy of all other documents served on Defendants in this action, as well as all pleadings filed in state court to date including but not limited to Defendants' Answer to Plaintiff's Complaint), are attached as **Exhibit**

**B**. Petersen Decl., ¶¶ 3, 4**.**

## II.    STATEMENT OF JURISDICTION

3.    The District Court has diversity jurisdiction under 28 U.S.C. § 1332(a) where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. As set forth below, both requirements are satisfied here. Therefore, this Court has subject matter jurisdiction over this case.

## III.    REMOVAL IS TIMELY

4.    A defendant in a civil action has 30 days from the date it is validly served with a summons and complaint to remove the action to federal court. 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.").

5.    As explained in Paragraph No. 2 above, Plaintiff served the Summons and Complaint on Trane's registered agent on January 9, 2026. Because Defendants filed this removal within 30 days of service of the Summons and Complaint, removal is timely.

## IV.    VENUE IS PROPER

6.    A "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[s] . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Plaintiff filed the Complaint in Superior Court for the County of Orange. Venue of this action, thus, lies in the United States District Court for the Central District of California as this district "embrac[es] the place where" the state action is pending. *Id.*

## V.    THIS COURT HAS DIVERSITY JURISDICTION OVER THE MATTER

7.    This case meets the requirements of 28 U.S.C. § 1332(a) and may be removed to federal court pursuant to 28 U.S.C. 1441 because it is a civil action: (1) "between citizens of different States" and (2) the amount in controversy exceeds the sum of $75,000,

exclusive of interest and costs. 28 U.S.C. §§ 1332(a), 1441.

8.      Diversity of citizenship is determined "as of the time the complaint is filed, and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of AmTracya*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

9.      In this case, complete diversity of citizenship exists between the <u>properly joined and served parties</u>.

**A.      <u>Plaintiff is a Citizen of California.</u>**

10.      For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

11.      According to Plaintiff's Complaint, and the right-to-sue notice served on Defendants', Plaintiff is a California resident. *See* Compl., ¶ 5 ("Plaintiff . . . was at all relevant times employed in the County of Orange, in the State of California."); *see also* Civil Rights Department Compl. No. 202512-32476504, ("Complainant Rakef Tamer, resides in the City of Long Beach, State of CA"). Plaintiff's allegations constitute *prima facie* evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *See Sololoff v. LRN Corp.*, 2013 WL 4479010, at *2-3 (C.D. Cal. 2013) (finding that the removing defendant "carried its burden of showing diversity" because it had presented evidence of plaintiff's residence, which was "'prima facia' [sic.] evidence of his domicile, and thus of his citizenship," and plaintiff failed to provide evidence of a different domicile); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile.").

12.      Plaintiff's domicile in California is further established by his continued employment with Trane in California from February 12, 2024 to October 28, 2025 and at the time of his termination, his last known residence was in the city of Victorville, California. *See* Declaration of Jackie Wesley, North America CHVAC Human Resources

Leader ("Wesley Decl.") at ¶¶ 5, 6; *see Kyung Park v. Holder*, 572 F.3d 619, 624-25 (9th Cir. 2009) (current residence and place of employment evidence of the intention to remain); *Heinz v. Havelock*, 757 F.Supp. 1076, 1079 (C.D. Cal. 1991) (so long as a plaintiff has not completed a move to another state, the plaintiff's domicile remains at the place of his or her last residence at the time a suit was filed).

13.    Based on the foregoing, Defendants have satisfied their burden to create a rebuttable presumption that Plaintiff is a citizen of California.

**B.    Defendant Trane is a Citizen of Delaware and North Carolina.**

14.    For purposes of diversity and removal, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *See* 28 U.S.C. § 1332(c).

15.    Trane is a citizen of both the State of Delaware and the State of North Carolina. Trane is incorporated in Delaware. *See* Wesley Decl. at ¶ 3. Furthermore, Trane's principal place of business is in Davidson, North Carolina. *Id.* At the time of the filing of the Complaint, Trane's headquarters and principal place of business was in Davidson, North Carolina, and as of the date of this Notice of Removal, Trane's headquarters and principal place of business remain in Davidson, North Carolina. *Id.* Trane's officers direct, control, and coordinate its nationwide services and overall business operations from the executive and administration offices in North Carolina. *Id.* Moreover, Trane's corporate officers perform their primary fundamental operations out of North Carolina. *Id.*

16.    Accordingly, Trane is a citizen of Delaware and North Carolina for purposes of diversity jurisdiction under the "nerve center" test. *See* 28 U.S.C. § 1332(c)(1); *Hertz v. Friend*, 559 U.S. 77, 78 (2010) (holding that a corporation's "principal place of business" under section 1332(c)(1) is typically its corporate headquarters so long as the headquarters is the actual center of direction, control, and coordination rather than an office to hold board meetings).

/ / /

/ / /

**C.** **Defendant Louise Rasmusssen is a Sham Defendant Whose Citizenship Must be Disregarded for Purposes of Removal.**

17. This Court should disregard Rasmussen's citizenship because she has not been properly joined. Although complete diversity is ordinarily required for a federal court to exercise diversity jurisdiction, "the fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants." *See Weidman v. Exxon Mobil Corp.,* 776 F.3d 214, 218 (4th Cir. 2015); *see also Rojas v. Sea World Parks & Entm't, Inc.*, 538 F.Supp.3d 1008, 1024 (S.D. Cal. 2021) ("[t]he Ninth Circuit has established that fraudulent joiner arises where . . . the plaintiff is unable to establish a cause of action against the non-diverse party in state court."). A Court may disregard, for jurisdictional purposes, the citizenship of a defendant added merely to destroy diversity. *See Weidman, supra*, 776 F.3d. at 218. It must only be shown that "there is no possibility that a plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Mayes v. Rapoport*, 198 F. 3d 457, 464 (4th Cir.1999); *see also Rojas*, *supra,* 538 F.Supp.3d at 1025 (noting that fraudulent joinder may be shown by proving a joined individual cannot be liable on any theory).

18. Rasmussen's addition to this lawsuit is improper because it is merely an attempt to destroy diversity. Plaintiff has not pled sufficient facts to state a viable claim for intentional infliction of emotional distress, the sole cause of action asserted against Rasmussen. Where no real claim exists against an individual defendant, the joinder may be disregarded as a "sham." *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 ("[I]f there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court . . . then those defendants have been fraudulently joined and must be ignored for purposes of diversity jurisdiction.").

19. Plaintiff has no basis for imposing liability against Rasmussen on his seventh cause of action for IIED. To state such a claim, Plaintiff must plead sufficient facts that Rasmussen engaged in "extreme and outrageous conduct" with "the intention of causing, or reckless disregard of the possibility of causing, emotional distress." *Hughes v. Pair* 46

Cal.4th 1035, 1050–1051 (2009). Plaintiff cannot establish that he was subjected to the kind of "extreme and outrageous" conduct required to support a viable claim for intentional infliction of emotional distress. Plaintiff's IIED claim is premised on his assertions that he emailed Rasmussen requesting to be rehired and complained that he believed he was terminated in retaliation for requesting a leave of absence, that Rasmussen misrepresented when she learned of his requested leave, and that she failed to escalate his complaint. Compl. ¶¶ 21-23. This conduct cannot possibly support an IIED claim because such claims do not extend to personnel management activity. *See Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."); *see also Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (firing an employee by itself does not constitute the "outrageous" conduct necessary to satisfy this claim, even if the firing was without cause). Additionally, assuming *arguendo* that Rasmussen's alleged conduct could retroactively be found discriminatory, which Defendants deny, the remedy is a suit against the employer for discrimination, for which an individual defendant such as Rasmussen cannot be held personally liable. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707, 708 (2009).

20.    Furthermore, Plaintiff's intentional infliction of emotional distress claim is preempted by the exclusive remedy provisions of California's Workers' Compensation Act. *See Cole v. Fair Oaks Fire Protection Dist.* 43 Cal.3d 148, 160 (1987) ("an employee suffering emotional distress…may not avoid the exclusive remedy provision of the California Labor Code by characterizing the employer's decision as manifestly unfair, outrageous, harassment or intended to cause emotional disturbance… the action is barred by the exclusiveness clause no matter what its name or technical form.").

21.    Accordingly, there is no basis for Plaintiff's IIED claim, and Rasmussen has been fraudulently joined to this action solely to defeat diversity of citizenship. Therefore, this Court should disregard Defendant Rasmussen's citizenship when determining diversity.

22.    Because Plaintiff is a California citizen, and Trane is a citizen of Delaware and North Carolina, and because the Court should disregard Rasmussen's citizenship, complete diversity of citizenship exists within the meaning of 28 U.S.C. § 1332. [1]

## VI.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

23.    This Court's jurisdictional minimum of an amount in controversy over $75,000 was satisfied at the time of the filing of this action, and still is satisfied, as is explained below.

24.    In determining whether the amount in controversy exceeds $75,000, the Court must presume the plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

25.    In measuring the amount in controversy, the Court must assume that the allegations in the Complaint are true and that a jury will return a verdict in favor of Plaintiff on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2002) 199 F.Supp.2d 993, 1001.  The ultimate inquiry is the amount that is put "in controversy" by Plaintiff's Complaint, and not how much, if anything, Defendant

---

[1] The citizenship of "doe" defendants is disregarded for removal purposes. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Soliman v. Philip Morris Inc.*, 311 F.3d 966 (9th Cir. 2002) (citizenship of fictitious defendants is irrelevant for removal purposes).

will actually owe. *Rippee v. Boston Market Corp.* (S.D. Cal. 2005) 408 F.Supp.2d 982, 986, citing *Scherer v. Equitable Life Assurance Soc'y of the U.S.* (2d Cir. 2003) 347 F.3d 394, 399 (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint). The amount in controversy includes the "amount of damages in dispute, as well as attorney's fees," and the Court may consider damages awards in similar cases. *Kroske v. U.S. Bank Corp.* (9th Cir. 2005) 432 F.3d 976, 980.

26.    The amount in controversy may include general and special compensatory damages and attorneys' fees that are recoverable by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) (claims for statutory attorneys' fees must be included in the amount in controversy regardless of whether such an award is discretionary or mandatory); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982), *cert. denied*, 459 U.S. 945 (1982) (attorney's fees may be taken into account to determine jurisdictional amount). Punitive damages are also included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acci. Asso.*, 325 F.2d 785, 787 (9th Cir. 1963). As instructed by the Ninth Circuit, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413, 414-415 (9th Cir. 2018); see, e.g., *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amount); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fee can be considered in determining whether the jurisdictional amount is met.

27.    Defendants expressly deny the validity and merit of all of Plaintiff's claims, the legal theories on which they are purportedly based, and the claims for monetary and

other relief that flow from them. However, *for purposes of this removal only*, and without conceding that Plaintiff is entitled to any damages or penalties, and assuming for the sake of argument the truth of Plaintiff's allegations, it is readily apparent that Plaintiff's claims establish an amount in controversy in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332.

28.   As a threshold matter, the Court may look to the Complaint and the removal papers for underlying facts establishing the jurisdictional limit for removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

**A.   Lost Wages.**

29.   Plaintiff seeks to recover lost wages. *See* Compl., ¶¶ 33, 44, 49, 55, 63, 71, 78; Prayer for Relief, ¶ 4.

30.   The Court may consider lost earnings in determining the amount in controversy. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (trial court properly considered evidence of plaintiff's lost wages in determining that the amount in controversy exceeded $75,000).

31.   Trane employed Plaintiff as a full-time employee from February 12, 2024, until October 28, 2025. At the time of his termination, Plaintiff's annual salary was $135,150. *See* Wesley Decl. at ¶ 6.

32.   Accordingly, Plaintiff's lost earnings since the end of his employment on October 28, 2025, currently totals approximately $33,787.50 ($11,262.50 per month x 3 months).

33.   When the date of a trial is not set, courts have found one year from the date of removal to be a *conservative* trial date estimate for purposes of removal. *Crockett v. Wal-Mart Assocs.,* No. 2:23-cv-01562-TLN-KJN, 2024 U.S. Dist. LEXIS 23719, at *8 (E.D. Cal. Feb. 8, 2024) (quoting *Reyes v. Staples Office Superstore, LLC*, 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019) ["[C]ourts have often found that one year from the date of removal is a 'conservative estimate of the trial date' in employment cases."]); *Arauz v. MAC Cosmetics, Inc.,* No. 2:22-cv-01663-MCE-KJN, 2023 U.S. Dist. LEXIS 78915, at *6

(E.D. Cal. May 4, 2023) (same). One year from the removal date is February 6, 2027. Thus, the amount of past and future lost earnings Plaintiff has put in controversy, *i.e.,* total lost earnings between Plaintiff's termination date of October 28, 2025 and the estimated trial date in this matter based on the conservative trial date estimate in federal court, February 6, 2027, is at least **$168,937.50** ($11,262.50 per month x 15 months). This alone establishes the amount in controversy requirement.

### B.    Attorney's Fees.

34.    Plaintiff also seeks to recover attorney's fees. *See* Compl., ¶¶ 36, 46, 52, 57, 74; Prayer for Relief, ¶ 6.

35.    Attorneys' fees may therefore be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees may be included in the amount in controversy if recoverable by statute or contract).

36.    The measure of such fees for determining the amount in controversy "should be the amount that can reasonably be anticipated at the time of removal, not merely those [fees] already incurred." *Goldberg v. CPC International*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement) (emphasis added); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal").

37.    As other courts noted, employment actions often "require substantial effort from counsel." *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (finding that the jurisdictional minimum was "clearly satisfied" given that in the court's "twenty-plus years' experience, attorney's fees in individual discrimination cases often exceed the damages.").

38.    Courts in this circuit have found an hourly rate of *at least* $525 for employment discrimination cases to be reasonable. *See Vysata v. Menowitz*, 2019 WL

6138469, at *3 (C.D. Cal. June 19, 2019) (finding a rate of $575 per hour reasonable in an employment litigation matter); *Finato v. Keith Fink & Assocs.*, 2018 WL 6978116, at *3 (C.D. Cal. Jan. 5, 2018) (finding an hourly rate of $525 per hour to be reasonable); *Andrade v Arby's Restaurant Group, Inc.*, 225 F. Supp. 3d 1115, 1144 (N.D. Cal. 2016) (finding that a $550 hourly rate was reasonable); *Red v. Kraft Foods Inc.*, 680 F. App'x 597, 599 (9th Cir. 2017) (finding a district court did not err in awarding $550 per hour).

39.    Courts have determined that 300 hours is reasonable estimate for the number of hours to be expended on an individual employment action through trial. *See Sawyer v. Retail Data, LLC,* 2015 WL 3929695, at *3 (C.D. Cal. Apr. 29, 2015) (finding an estimate of 300 hours to be expended on a wrongful terminate claim was reasonable)*; see also Sasso, supra*, 2015 WL 898468, at *6; *Melendez v. HMS Host Family Restaurants, Inc.*, 2011 WL 3760058, at *4 (C.D. Cal. Aug. 25, 2011).

40.    Accordingly, to litigate this case through trial at the rate of $525 per hour, it is reasonable to anticipate that Plaintiff's attorneys' fees will be at least **$157,500** (300 hours x $525 per hour). The attorneys' fees alone establish the amount in controversy requirement.

**C.    Emotional Distress.**

41.    Plaintiff seeks to recover damages for emotional distress. *See* Compl., ¶¶ 34, 45, 50, 56, 64, 72, 79; Prayer for Relief, ¶ 5.

42.    Emotional distress damages are properly considered in calculating the amount in controversy. *See Simmons, supra,* 209 F. Supp. 2d 1029 at 1031-35 (clarifying that it is proper to consider emotional distress damages even when the amount of such damages is not clearly pled in the complaint).

43.    A defendant may introduce evidence of jury verdicts in other cases as evidence of plaintiff's potential emotional distress damages. *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) (concluding that, given other jury verdicts, it was more likely than not that emotional distress damages would be substantial if the allegations in the Complaint were accepted as true).

44.     Emotional distress damages awards in single-plaintiff wrongful termination and/or retaliation actions often exceed $75,000. Indeed, recent jury verdicts in cases that are analogous and/or allege the same discrimination/retaliation/wrongful termination claims as Plaintiff, establish that Plaintiff's alleged emotional distress damages exceed the jurisdictional minimum of this Court. *See, e.g., Jensen v. the Home Depot*, JVR No. 2111100016, 2021 WL 5232068 (Cal.Super.) (awarding plaintiff $3,249,431 for pain and suffering in a discrimination and retaliation case); *Bralock v. American University of Health Sciences, Inc.*, JVR No. 2110120019, 2021 WL 4772989 (Sept. 21, 2021) (awarding plaintiffs $250,000 each for pain and suffering in a retaliation case); *Zirpel v. Alki David Productions, Inc.*, JVR No. 2111190002 (October 5, 2021) (awarding plaintiff $1,068,717 in compensatory damages in a retaliation case); *Gardenhire v. Housing Authority*, 85 Cal.App.4th 236, 237 (2000) (upholding emotional distress award of $1.3 million in a case alleging wrongful termination); *Baghumian v. County of Los Angeles*, JVR No.1807270047, 2018 WL 3609142 (Cal. Super. Ct. May 11, 2018) (awarding $175,000 in emotional distress damages in a wrongful termination case).

45.     These jury verdicts show that Plaintiff's alleged emotional distress damages in this action are potentially substantial. Accordingly, Plaintiff has put at least **$75,000** in emotional distress damages in controversy.

46.     In sum, and as shown in the chart below, the total amount in controversy, excluding punitive damages, is *at least* **$471,112**:

| Type of Damages | Amount in Controversy |
| --- | --- |
| Lost Earnings | $168,937.50 |
| Attorneys' Fees | $157,500+ |
| Emotional Distress | $75,000 + |
| **Total:** | **$333,937.50+** |

## D.     Punitive Damages.

47.     According to Plaintiff's Complaint, Plaintiff also seeks to recover alleged punitive damages. *See* Compl., ¶¶ 35, 51, 57, 65, 73, 80.

48.     Because Plaintiff seeks punitive damages, punitive damages should be considered in determining the amount in controversy. *Bell vs. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) (explaining that in determining the amount in controversy, courts must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees).

49.     Although Defendants deny liability, it is more likely than not that Plaintiff has put at least $75,000 in controversy for Plaintiff's punitive damages, either alone or in combination with Plaintiff's other claims. *See, e.g., Zirpel v. Alki David Productions, Inc.,* JVR No. 2111190002 (October 5, 2021) (awarding plaintiff $6,000,000 in punitive damages in a whistleblower retaliation case); *Ortega v. Carson Wild Wings LLC*, JVR No. 2004090009 (February 11, 2020) (awarding a plaintiff $100,000 in punitive damages for a wrongful termination and retaliation matter in Los Angeles County); *Quemada v. Cordoba Corporation*, JVR No. 2004230004 (December 6, 2019) (awarding a plaintiff $1.5 million in punitive damages where the plaintiff alleged wrongful termination); s*ee also Romero v. Leon Max, Inc.*, 2009 WL 5258439 (awarding the plaintiff $50,000 in punitive damages, where plaintiff claimed she had been wrongfully terminated); *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (Cal. 2009) (affirming punitive damages award of $1,905,000).

## VII.   <u>SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446</u>

50.     In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which the action is pending.

51.     This Court is the proper venue because it is in the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

52.     In accordance with 28 U.S.C. §1446(a), this Notice of Removal is accompanied by Exhibits A and B, which are copies of all process, pleadings, and orders served on Defendants. Petersen Decl. ¶ 4.

53.    In accordance with 28 U.S.C. §1446(b), Defendants' Notice of Removal was filed within 30 days after service of the Summons and Complaint on Trane's registered agents on January 9, 2026.

54.    In accordance with 28 U.S.C. §1446(d), Defendants will give written notice of the original removal of this action to Plaintiff via his counsel and file a copy of that Notice with the Orange County Superior Court. Petersen Decl. ¶ 5.

## VIII.  CONCLUSION

55.    Because jurisdiction is proper under 28 U.S.C. § 1332 (diversity), Defendants respectfully request that this Court exercise its removal jurisdiction over this action.

DATED:  February 9, 2026          JACKSON LEWIS P.C.


By:    _____
       Clarisse C. Petersen
       Kaitlyn N. Spear

       Attorneys for Defendants
       TRANE U.S. INC. and LOUISE RASMUSSEN

4901-4318-5549, v. 5